[Cite as *State v. Lawson*, 2022-Ohio-3972.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

PAUL PATRICK LAWSON,

        Defendant-Appellant.

**CASE NO. 2021-L-133**

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2021 CR 000471

---

## O P I N I O N

Decided: November 7, 2022
Judgment: Affirmed

---

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Jamie R. Eck*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Paul Patrick Lawson, appeals his convictions after a jury found him guilty of four counts of Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4) and 2907.05(A)(1).

{¶2} Specifically, Appellant asserts that the trial court erred in denying his motion for acquittal pursuant to Crim.R. 29(A) and that his convictions are against the manifest weight of the evidence. For the following reasons, we affirm the judgment of the Lake County Court of Common Pleas.

## Substantive and Procedural History

{¶3}  Appellant and the victim, A.V. (D.O.B 3/27/2007), have known each other since A.V. was around four or five years old.  A.V.'s mother is related to Appellant's daughter-in-law, Kaitlyn, and the two families are very close.

{¶4}  Appellant and A.V. grew closer in 2018 when the families went on a camping trip together.  A.V. was eleven years old and Appellant was around sixty.  After the camping trip, A.V. started to consider Appellant as a "grandfather" figure.  (T.p. 283, 323).  Between 2018 and 2020, A.V. and Appellant spent a lot of time together.  She helped him clean up his house in anticipation of a new roommate's arrival, he frequently took her fishing, and they would talk on the phone.

{¶5}  In December 2020, A.V. disclosed to her mother that Appellant had inappropriately touched her on multiple occasions.  A.V.'s mother called Kaitlyn to come over and discuss the allegations because she was upset.  They called the police and the police arrived at A.V.'s home shortly thereafter.  A.V. spoke to the police, and also spoke to Kaitlyn before and after the police arrived.  A.V. claimed that the inappropriate relationship began in early 2020 when she went to Appellant's home to help him clean (A.V. turned thirteen years old on March 27, 2020).

{¶6}  Appellant was indicted on seven counts of Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4) and 2907.05(A)(1).  A.V., her mother, police officers, and Kaitlyn testified at the jury trial.  At the close of the state's evidence, Appellant moved for acquittal under Crim.R. 29(A), arguing that the state did not provide sufficient evidence to convict Appellant.  The court denied the motion.

{¶7} The jury found Appellant guilty on count one of Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4), and counts two, three, and four, in violation of R.C. 2907.05(A)(1).

{¶8} The court sentenced Appellant to 60 months imprisonment on count one, and 12 months each on counts two, three, and four. The court ordered consecutive sentences on all counts, for a total of 96 months imprisonment.

{¶9} Appellant timely appealed and raises two assignments of error.

### Assignments of Error and Law

{¶10} Appellant's assignments of error state:

{¶11} (1) The trial court erred to the prejudice of the Defendant-Appellant when it denied his motion for acquittal under Crim.R. 29(A).

{¶12} (2) The trial court erred to the prejudice of the Defendant-Appellant when it returned a verdict of guilty against the manifest weight of the evidence.

**Sufficiency of the evidence:**

{¶13} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29. Under Crim.R. 29(A), "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 261 (1978), at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the

3

state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166, 2003-T-0167, 2004-Ohio-6688, ¶ 18.

{¶14} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing Black's Law Dictionary (6 Ed.1990) 1433. The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶15} When evaluating the sufficiency of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails a review of the elements of the charged offense and a review of the State's evidence. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

**Manifest weight of the evidence:**

{¶16} "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics but depends on its effect in inducing belief." *Thompkins.*

4

at 387. Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates the evidence's persuasiveness. *Id.* The reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶17} The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any of the outcome of the case and the connection with the prosecution or the defendant. *Id.,* quoting *Antil* at 67. This court, engaging in the limited weighing of the evidence introduced at trial, must defer to the weight and factual findings made by the jury. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at 390 and *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus.

{¶18} A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

5

Case No. 2021-L-133

**Analysis**

**Count one:**

{¶19} Appellant first asserts that the state did not prove all elements of count one of Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4). Appellant also asserts that inconsistencies in the evidence weigh against finding that Appellant violated R.C. 2907.05(A)(4).

{¶20} Because a finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence, we begin by analyzing whether it was against the manifest weight of the evidence for a jury to find Appellant guilty of violating R.C. 2907.05(A)(4).

{¶21} R.C. 2907.05(A)(4) provides that no person shall have sexual contact with another when the other person is less than thirteen years of age.

{¶22} "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶23} A.V. testified at trial that the first time Appellant inappropriately touched her was when she went to his house to help him clean up in anticipation of a new roommate's arrival with a baby. A.V. testified that she was sitting on Appellant's lap when he unbuttoned her pants and put his hands on her pubic region until she stood up and stated that they should start cleaning. A.V.'s testimony was detailed and credible.

{¶24} Appellant contends that the state failed to prove that A.V. was twelve years old when the conduct satisfying R.C. 2907.05(A)(4) occurred.

6

{¶25} At trial, when defense counsel asked A.V. if it was "possible" the house cleaning was after her thirteenth birthday on March 27, 2020, she replied "yes." However, A.V. testified that she was confident the conduct occurred before her birthday because she received a cell phone shortly before her birthday as a gift and remembers she did not yet have a cell phone when she went to Appellant's house to help clean. A.V.'s testimony could be viewed as contradictory here. However, A.V.'s mother and Kaitlyn also testified that A.V. was twelve when she went to Appellant's home to help clean. A.V.'s mother testified that A.V. helped Appellant clean his house in January 2020, two months before A.V.'s thirteenth birthday. A.V.'s mother testified that she remembered the day was in January because it was before Appellant's roommate moved in with a baby. Kaitlyn also testified that the house cleaning was in "early 2020" in January or February because it was before Appellant's roommate moved in. Lastly, the detective investigating the case testified that Appellant told him the house cleaning was either "towards the end of 2019" or the "very beginning of 2020."

{¶26} The only evidence suggesting it could have been after her birthday was A.V.'s testimony that it was "possible." Yet all other witnesses who testified stated that the house cleaning was in either January or February, "early" 2020 (before A.V.'s thirteenth birthday on March 27, 2020.) Even Appellant, during his interview with police officers, stated that A.V. went to his house to help clean either at the end of 2019 or early 2020.

{¶27} Overall, the greater weight of the evidence (including all reasonable inferences and the credibility of all four witnesses who testified that A.V. was twelve when the conduct occurred) demonstrates that the jury did not clearly lose its way and create

7

such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. This is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶28} Hence, since it was not against the manifest weight of the evidence for a jury to convict Appellant of R.C. 2907.05(A)(4), that necessarily means the judgment was supported by sufficient evidence. *Arcaro.* at ¶ 32.

{¶29} Appellant's assignments of error as to count one are without merit.

**Counts two, three, and four:**

{¶30} Appellant next asserts that the state did not prove all elements of counts two, three, and four of Gross Sexual Imposition, in violation of R.C. 2907.05(A)(1). Appellant also asserts that the evidence weighs against finding that Appellant violated R.C. 2907.05(A)(1).

{¶31} Again, we begin analyzing whether Appellants conviction was against the manifest weight of the evidence.

{¶32} R.C. 2907.05(A)(1) provides that no person shall have sexual contact with another when the offender purposely compels the other person to submit by force or threat of force.

{¶33} Appellant first asserts that the evidence weighed against convicting him for having "sexual contact" with A.V.

{¶34} "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

8

Case No. 2021-L-133

**{¶35}** At trial, A.V. testified to at least three instances where Appellant removed or unbuttoned her clothes and touched either her breasts or her pubic region. A.V. testified that on one occasion, Appellant knelt in front of her, unbuttoned her shirt, removed her bra, and placed his mouth on her breast. She also described an incident in Appellant's camper where they were lying down next to one another and he touched her inappropriately. Appellant's testimony is credible because she described each instance, detailed exactly where Appellant touched her on each occasion, and was consistent within her testimony.

**{¶36}** Appellant argues that the evidence weighed against a conviction because no witnesses corroborated A.V.'s testimony. Appellant would have us disbelieve A.V. However, he offers no justification for doing so, other than no one else saw the conduct alleged. Nothing in the record suggests this victim deserves such disrespect. Moreover, a lack of corroborating eyewitness testimony is not a basis for reversal alone. *State v. Branch*, 3d Dist. Allen No. 1-12-44, 2013-Ohio-3192, ¶ 110. It is not at all unusual that a sixty-one year old man would take pains to avoid detection while engaging in the conduct alleged here.

**{¶37}** Appellant next contends that his conduct was not done with force or by threat of force.

**{¶38}** "'Force' means 'any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). The Ohio Supreme Court has addressed the issue of "force or threat of force" several times in the context of the rape statute, R.C. 2907.02 and has loosened the definition. Appellate courts have extended the application of the Court's interpretations to apply under R.C. 2907.05(A)(1).

9

See *State v. Henry*, 3rd Dist. Seneca No. 13-08-10, 2009-Ohio-3535. "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51, 55, 600 N.E.2d 661 (1992). Force can be inferred from the circumstances surrounding the sexual contact and is established if it is shown that the victim's will was overcome by fear or duress. *State v. Rodriguez*, 8th Dist. Cuyahoga App. No. 82265, 2003–Ohio–7056. Further, in situations involving an authority figure relationship with minor children, "force need not be overt and physically brutal, but can be subtle and psychological." *State v. Eskridge*, 38 Ohio St.3d 56, 59, 526 N.E.2d 304 (1988). Courts have long recognized the coercion inherent in cases involving parents or other figures of authority sexually abusing children in their care. *Id.* at 58-59. The amount of force necessary to commit the offense "depending upon the age, size and strength of the parties and their relation to each other." *Id.* at paragraph one of the syllabus.

{¶39} In support of this argument, Appellant notes that A.V. testified at trial that she was not forced nor threatened. However, it is unclear whether A.V. (who was fourteen years old when she testified) contemplated the accepted legal definition of what constitutes "force or threat of force" in a case like this. An offender may be convicted of using force even "without evidence of express threat of harm or evidence of significant physical restraint." *State v. Dye*, 82 Ohio St.3d 323, 695 N.E.2d 763, (1998), paragraph one of the syllabus. Appellate courts have also found "force" where the offender removed the victim's clothing, but did not threaten nor physically restrain the victim. *State v. Rutan*, No. 97APA03-389, 1997 WL 781902 (10th Dist. Dec. 16, 1997). Similarly, in *State v. Oddi*,

10

5th Dist. No. 02CAA01005, 2002–Ohio–5926, the court held that the offender, a driving instructor, used force when he inappropriately touched students who were fifteen and a half years old on their breasts and pubic regions. In *Oddi*, the students were not threatened nor physically restrained, but they felt afraid because the driving instructor was in a position of authority over them. *Id.*

{¶40} A.V. described that Appellant would frequently remove or unbutton her shirts, bras, and pants when she was sitting on his lap or lying next to him. At trial, when A.V. was asked why she never tried to stop Appellant's conduct, she testified that she was afraid he would do something to her because he was bigger than she was. She testified that Appellant had asked her to keep his conduct a "secret." Moreover, Appellant was around the age of sixty-one when the conduct occurred; A.V. was between ages twelve and thirteen. A.V. described these instances in detail. The detective testified that A.V. pointed out the locations at the fishing spot where Appellant touched her.

{¶41} Further, Appellant was an "authority figure" to A.V. because she was put in his care during these occasions. A.V. testified that her mother told her that Appellant was in charge and to "obey" him when she was in his care. The relationship between Appellant and A.V. was also analogous to an authority figure because she testified that he was "like family" to her and she considered him as a grandfather type figure.

{¶42} The jury's convicting Appellant of gross sexual imposition by force or threat of force, in violation of R.C. 2907.05(A)(1) was not against the manifest weight of the evidence. A.V.'s testimony detailed each occasion Appellant inappropriately touched her when she was in his care, including which clothing he removed, and where he touched her each time. A.V. also testified that when he did so, she was afraid to push back

11

because he was bigger than her. Weighing the evidence together, (including all reasonable inferences and the credibility of A.V.'s detailed testimony) the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. This is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶43} Thus, since it was not against the manifest weight of the evidence for a jury to convict Appellant of R.C. 2907.05(A)(1), that necessarily means the judgment was supported by sufficient evidence. *Arcaro, supra,* at ¶ 32.

{¶44} Appellant's assignments as to counts two, three, and four are without merit.

{¶45} We affirm the judgment of the Lake County Court of Common Pleas.


THOMAS R. WRIGHT, P.J.,

MATT LYNCH, J.,

concur.